IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR359 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ROBERT BURGHARDT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on June 17, 2011.

**1. Facts**

The defendant was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and subject to sentencing under 18 U.S.C. § 924(a)(2). Filing No. 1, Indictment. On February 11, 2011, the government filed an Information of Prior Convictions, pursuant to 18 U.S.C. 924(e)(1) (the Armed Career Criminal Act or "ACCA"). Filing No. 25. The government contends Burghardt is eligible for an enhancement under the ACCA and is subject to a 15-year mandatory minimum sentence based on the following three convictions in Douglas County District Court: 1) attempted burglary on July 14, 1993; 2) delivery of a controlled substance on August 11, 1994; and 3) possession with intent to distribute a controlled substance on July 17, 2003. *Id.* The defendant entered a plea of guilty to Count I of the Indictment, reserving the right to challenge the Armed Career Criminal issue. Filing No. 32, Minutes; Filing No. 31, Petition. The court accepted his plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of

Probation (hereinafter, "the Probation Office") that calculated his sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 32, Minute Entry.

In the PSR, the defendant's offense conduct was based on the prosecutor's version of events.  Filing No. 44, PSR (Sealed) at 5-6.  Law enforcement officers executed a no-knock warrant at the defendant's address and found a loaded .40 caliber Glock handgun, 6 grams of methamphetamine, a scale, baggies, some marijuana, and $693.00 in cash. *Id*.  The Probation Office noted that law enforcement had received information from a reliable source that the defendant was selling methamphetamine from his residence and carried a .40 caliber handgun. The Probation Office concluded "[a]s a result of the defendant being in possession of a firearm and drugs, it appears the defendant possessed the firearm in connection with another felony (drug trafficking)." *Id.* at 6.

Burghardt is 37 years old. *Id*. at 10.  He has a GED that he obtained while in prison. *Id*. at 20.  He is in the process of a divorce and has three children. *Id*. at 17.  He has experienced serious depresssion and anxiety throughout his life. *Id*. at 18.  He has been employed in construction and as a painter, a packager and a telemarketer. *Id*. at 20.  At the time of sentencing he was employed full-time by Coreslab Structures Omaha in LaPlatte, Nebraska, earning $10.10 an hour. *Id*.  He has a long history of drug and alcohol abuse. *Id*. at 10-11.  He began drinking at age 13, using methamphetamine at age 21, and using cocaine at age 26. *Id*.  At the time of the instant offense, he was using 2-3 grams of methamphetamine a day. *Id*. at 19. He has received drug treatment three times:  he successfully completed a residential substance abuse treatment program at St. Gabriel's in Omaha, Nebraska, in 1992, and remained sober for two months; he received treatment while incarcerated at the Nebraska State Penitentiary in 2003-2005; and he was being

2

treated at the Stephen Center in Omaha pending the resolution of these charges. *Id*. at 19.

The Probation Office determined that the defendant's base offense level was 20 under U.S.S.G. §§ 2K2.1(a)(4)(A). *Id*. at 7*.* It found the following upward adjustments were applicable: a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for possession of 3 to 7 firearms; and a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), for possessing a firearm in connection with another felony. *Id*. at 8. The application of these enhancements results in an adjusted offense level of 26. *Id.* After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, the defendant's total offense level under the Guidelines is 23. *Id*.

The Probation Office assessed 7 criminal history points for convictions for drug possession, drug distribution, possession of drug paraphernalia, and attempted burglary. *Id*. at 9-14. At offense level 23 and criminal history category IV, Burghardt's range of imprisonment under the Guidelines would be 70 to 87 months, absent application of the Career Offender enhancement. United States Sentencing Commission, Guidelines Manual, Sentencing Table (Nov. 2010).

The Probation Office found that the defendant has three felony convictions which meet the definition of a violent felony or serious drug offense under 18 U.S.C. § 924(e)(2)(B). Filing No. 44, PSR at 8. It found "Mr. Burghardt possessed a firearm while drug trafficking and he has three felony convictions which meet the criteria of a violent felony or serious drug offense. Therefore, he meets all the criteria for this enhancement to apply." *Id*. If the defendant is determined to be an Armed Career Criminal under 18 U.S.C. § 924(e)(2)(B), his offense level is 34 under U.S.S.G. § 4B1.4(b)(3)(A). *Id*. After

3

deduction of three levels for acceptance of responsibility, the defendant's total offense level would be 31. *Id.* Further, if the defendant is an Armed Career Offender, his criminal history category becomes a VI under U.S.S.G. § 4B1.4(c)(2), resulting in a Guidelines range of imprisonment of 188 to 235 months.

The government adopted the findings in the PSR. Filing No. 37. The defendant objected to the application of the ACCA. Filing No. 35 & Filing No. 36. He argues that his 1993 conviction for attempted burglary does not constitute a violent felony under the ACCA.

**2. Law**

A. The Armed Career Criminal Act

It is a federal crime for a convicted felon to be in unlawful possession of a firearm. 18 U.S.C. § 922(g)(1). The ordinary maximum sentence for that crime is 10 years of imprisonment. 18 U.S.C. § 924(a)(2). If, however, when the unlawful possession occurred, the felon had three previous convictions for a violent felony or serious drug offense, the punishment is increased to a minimum term of 15 years. 18 U.S.C. § 924(e). The term "violent felony" under the statute means "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B)(i) &(ii) (emphasis added). This last clause, known as the "residual clause," is not intended as a catch-all provision, but, instead, "the provision's listed examples—burglary, arson, extortion, or

4

crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope." *Begay v. United States*, 553 U.S. 137, 142 (2008).

Whether a prior conviction counts as a predicate offense under 18 U.S.C. § 924(e) is a legal determination. *United States v. Keith*, 638 F.3d 851, 852 (8th Cir. 2011). The Supreme Court has explained that in determining whether an offense is a violent felony, courts must employ a categorical approach under which the court looks "'only to the fact of conviction and the statutory definition of the prior offense, and do[es] not generally consider the particular facts disclosed by the record of conviction.'" *Sykes v. U.S.*, — U.S. —, 2011 WL 2224437, *3 (June 9, 2011) (quoting *James v. United States*, 550 U.S. 192, 202 (2007)). The court is to "'consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.'" *Id*. (quoting *James*, 550 U.S. at 202). Regardless of whether the circumstances in the defendant's prior conviction were violent, the question for the court is whether the predicate offense, as a categorical matter, is a violent felony. *Id.*

The Supreme Court has interpreted the residual provision to encompass some attempt offenses. *See James,* 550 U.S. at 202-03. The question is whether the state criminal statute—under which the defendant sustained his earlier conviction—"falls within the residual clause because, as a categorical matter, it presents a serious potential risk of physical injury to another." *Sykes*, 2011 WL 2224437 at *6. Attempted burglary under Florida law is a violent felony for purposes of the residual clause because it poses the same kind of risk of physical injury as the enumerated offense of completed burglary. *James,* 550 U.S. at 202-03 (noting that the Florida Supreme Court considerably narrowed

5

the element of committing "any act toward the commission" of burglary to mean "an overt act *directed toward entering* or remaining in a structure or conveyance") (emphasis added). "The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party." *James*, 550 U.S. at 203.  In *James*, however, the Supreme Court "emphasized that the attempted burglary statute under consideration did not extend to 'preparatory conduct' such as 'acquiring burglars' tools or casing a structure while planning a burglary,' which conduct 'does not pose the same risk of violent confrontation and physical harm posed by an attempt to enter a structure illegally.'" *United States v. Ross*, 613 F.3d 805, 808 (8th Cir. 2010) (citations omitted) (quoting *James*, 550 U.S. at 202, 204-06 n. 4.)  "The [Supreme] Court declined to consider whether this 'more attenuated conduct' presents a potential risk of serious injury within the meaning of § 924(e)."  *Id.* (quoting *James*, 550 U.S. at 206).

Under Nebraska law, a person commits attempted burglary if such person intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the commission of the crime of burglary.  *State v. Thomas*, 468 N.W.2d 607, 609 (Neb. 1991); Neb. Rev. Stat. § 28-201.  A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value.  *Id.*; Neb. Rev. Stat. § 28-507 (Reissue 1989).

Nebraska has adopted the Model Penal Code definition of attempt, which requires proof of some intentional act which would constitute a substantial step towards the

completion of the crime.  *United States v. Ross*, 613 F.3d 805, 807 (8th Cir. 2010); *see State v. Sodders*, 304 N.W.2d 62, 65 (Neb. 1981) (noting that "[i]n adopting § 28-201(1)(b) the Legislature adopted the position of the Model Penal Code.  In imposing attempt liability, the Model Penal Code is primarily concerned with the dangerous disposition of the actor, but recognizes the legal principle that the law does not seek to punish evil thought alone and thus "the statute requires that the dangerous disposition be manifested by some intentional act which would constitute a substantial step toward the completion of the crime if the circumstances were as the actor believed them to be."  *Id.* at 64-65.  "Examples of such acts include 'unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed,' but also 'reconnoitering the place contemplated for the commission of the crime' and 'possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances.'"  *Ross,* 613 F.2d at 808 (quoting  *State v. Pittman*, 556 N.W.2d 276, 286 (Neb. App. 1996)).  Whether a defendant's conduct constitutes a substantial step toward the commission of a crime and is an attempt is generally a question of fact.  *Pittman,* 556 N.W.2d at 286; *see State v. Green,* 471 N.W.2d 402, 410 (Neb. 1991).  The Model Penal Code lists relevant examples of such conduct, including "(a) lying in wait, searching for or following the contemplated victim of the crime; (b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (c) reconnoitering the place contemplated for the commission of the crime; (d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (e) possession of materials to be employed in the commission of the crime, that are specially designed for

such unlawful use or that can serve no lawful purpose of the actor under the circumstances; (f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; and (g) soliciting an innocent agent to engage in conduct constituting an element of the crime. Model Penal Code § 5.01(2)(1985); *see also Pittman*, 556 N.W.2d at 286 (finding evidence that the defendant "was prowling around the bar after hours," and peeking through windows at the victim, while in possession of "a loaded shotgun, a pry bar, wirecutters, and cable ties shaped into Flex-cufs, items which could serve no lawful purpose under the circumstances; and attached to his bed at home were chains and dog collars" supported a finding of attempted kidnapping with intent to commit a felony, i.e., sexual assault); *State v. Tomek*, 2006 WL 1460405 (Neb. App. 2006) (finding no support for the contention that "mere preparation" does not constitute "substantial step" and holding that driving to an arranged meeting place is a substantial step in connection with a charge of attempted contributing to the delinquency of a minor).

Essentially, the "overt act directed at entry" requirement means that the "'would -be burglar is actually present at the building and attempting to enter it,'" thus creating a risk of injury akin to the enumerated crime of burglary, because if he "is not at the building or in the vicinity, the potential risk of physical injury to others is nearly nonexistent." *See United States v. Martinez*, 602 F.3d 1166, 1170 (10th Cir. 2010) (quoting *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007)). The Model Penal Code comment that addresses the "reconnoitering" example states that its rationale is "that firmness of purpose is shown when the actor proceeds to scout the scene of the contemplated crime in order to detect

possible dangers and to fix on the most promising avenue of approach."  Model Penal Code § 5.01(2)(c); § 5.01, cmt. n. 6(b)(iii) at 337; *see* *Martinez*, 602 F.3d at 1172 (noting that "[s]uch reconnoitering, which may be conducted hours, or even days, before the planned burglary, would not constitute attempted burglary under Florida law (as understood in *James*) and does not present risks of physical harm comparable to that of completed burglary"); *United States v. Permenter*, 969 F.2d 911, 913 (10th Cir. 1992) (when conduct such as "'casing' the targeted structure"—that is, reconnoitering—can sustain an attempted-burglary conviction, the attempt offense is not a violent felony under the ACCA).

In the context of the present case, the court finds that the attempted burglary statute at issue is closer to the statute at issue in *Martinez* than to the statute at issue in *James*. The Nebraska Supreme Court's adoption of the Model Penal Code position means that there are several ways to violate the criminal statute that would not involve a risk of physical harm comparable to that of a completed burglary.  Under Nebraska law, as a categorical matter, conduct covered by the statute, in the ordinary case, does not present a risk of injury similar to that presented in a completed burglary.  The Nebraska attempt law criminalizes "preparatory conduct that does not pose the same risk of violent confrontation and physical harm posed by an attempt to enter a structure illegally" and is the sort of "attenuated conduct" on which the Supreme Court reserved judgment.  *See* *James*, 550 U.S. at 205-06.  In Nebraska, the conduct need only manifest a "firmness of purpose" that takes the actor beyond the realm of "evil thought alone."  Because the attempted burglary statute has received no narrowing construction limiting its application to would-be burglars in the vicinity of a targeted building and would cover "relatively unrisky" conduct such as "making a duplicate key, 'casing' the targeted building, obtaining floor plans of a structure,

9

or possessing burglary tools" it does not qualify as an ACCA predicate offense. *United States v. Strahl*, 958 F.2d 980, 986 (10th Cir. 1992); *see also United States v. Weekley,* 24 F.3d 1125, 1127 (9th Cir. 1994) (involving casing the neighborhood, selecting a house to burgle, and possessing neckties to be used in the burglary).  Accordingly, the court finds the defendant's objection to the PSR should be sustained.

B.   Guidelines Determination

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough*, 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant.  *See*, e.g., *Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States,* 129 S. Ct. 890, 891-92 (2009).  That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."  *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).  The sentencing court must first calculate the Guidelines range, and then consider what sentence is

appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson,* 129 S. Ct. at 891-92.

As discussed above, the court sustains the defendant's objection to the PSR. The court will not apply the Armed Career Offender statutory mandatory minimum sentence. To the extent that the career offender provisions of the Guidelines apply, the court will vary from the Guidelines. The court otherwise adopts the findings in the PSR. The court finds defendant's base offense level is 20 and the following adjustments are applicable:  a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for possession of 3 to 7 firearms; and a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), for possessing a firearm in connection with another felony. The court finds the defendant's criminal history category is IV. At criminal history category IV and total offense level 31, Burghardt's recommended sentencing range under the Guidelines is 70 to 87 months. No departure is warranted.

### 3. Section 3553(a) Factors

To the extent that the defendant could be considered a career offender under the Guidelines, the defendant's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines' career-offender provisions is warranted in this case. Absent application of career-offender Guidelines, the court finds that a Guidelines-recommended sentence of 70 months (six years, eight months) followed by a term of supervised release of five years will fulfill the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds being a felon in possession of firearms is a serious offense. Nevertheless, the court finds that

the defendant's culpability is tempered somewhat by his long history of drug abuse.  The record shows he has had mental health issues as well.  It appears that the defendant's mental status and his addiction contributed to his actions and must be considered in determining his culpability for his actions.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  The court notes that, although career offender enhancements do not apply, the defendant remains subject to several enhancements under the Guidelines that significantly increase his sentence.   The court finds the low-end Guidelines-recommended sentence of seventy months is reasonable under the circumstances of this case and is appropriate to achieve the goals of sentencing.  The defendant has been in jail before and this sentence exceeds his longest prior sentence.  He has made significant progress in addressing his addiction and should be commended for completion of the rigorous inpatient treatment program at the Stephen Center.  He has expressed sincere remorse and a desire to turn his life around.  The public will be adequately protected by a five-year term of supervised release with strict conditions and by the provision of additional addiction treatment.  The deterrent effect of any longer sentence would be marginal.  The court has also considered the need to avoid sentencing disparities.  The imposition of a sentence that is not under the ACCA brings this sentence in line with others that involve similar conduct and similar criminal histories.  This defendant's conduct does not reflect

12

the lack of concern for safety and indifference to collateral consequences that characterize the conduct of defendants who qualify as Armed Career Criminals.

DATED this 21st day of June, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.